IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
BOBBY W. LINDSAY,              )
                               )
          Plaintiff,           )
                               )
     v.                        )     1:18CV406
                               )
EAST PENN MANUFACTURING CO.    )
INC.,                          )
                               )
          Defendant.           )
```

**MEMORANDUM OPINION AND ORDER**

**OSTEEN, JR., District Judge**

Plaintiff Bobby W. Lindsay brings claims for employment discrimination and retaliation against his former employer, Defendant East Penn Manufacturing Co. Inc. (Complaint (Doc. 7).) Defendant has moved to dismiss these claims pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. 12.) For the reasons that follow, this court finds that Defendant's motion should be denied.

**I.   FACTUAL & PROCEDURAL BACKGROUND**

In reviewing a motion to dismiss, this court "must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. 89, 94 (2007).

Plaintiff was employed by Defendant from 2008 until 2016. (Complaint ("Compl.") (Doc. 7) ¶ 3.) In approximately 2014, Plaintiff applied for an internal promotion to lead man and did

not receive the position. (Id. ¶ 12.) Instead, Defendant allegedly hired a less-qualified white employee from outside the company. (Id.) Plaintiff alleges that, when he brought this to the attention of management, "he was informed by East Penn management that the company had a policy of not promoting black employees." (Id. ¶ 13.)

Plaintiff further alleges that, on multiple occasions, he was the recipient of racial slurs and demeaning comments from several specific co-workers, including being called a "black mother fucker" in August 2016. (Id. ¶¶ 4-5.) Plaintiff further alleges that certain white co-workers spat on black co-workers on multiple occasions. (Id. ¶ 6.) Plaintiff complained about these incidents to management in late August 2016, who allegedly took no meaningful action and blamed Plaintiff for bringing the treatment on himself. (Id. ¶¶ 7-8.)

After the complaint about disparaging racial comments in late August 2016, Defendant allegedly disciplined Plaintiff for using foul language on September 2, 2016 and then terminated Plaintiff for insubordinate conduct on October 4, 2016. (Id. ¶¶ 9-10.) Plaintiff filed his Complaint in this matter in Forsyth County Superior Court on April 9, 2018, (Doc. 4-1), and Defendant then removed the matter to this court as a federal-question case. (See Doc. 4.) Plaintiff brings claims for a

hostile work environment, discriminatory failure to promote, and retaliation pursuant to 42 U.S.C. § 1981, and for violation of a state public policy. (Compl. (Doc. 7) ¶¶ 14-23.) Defendant has moved to dismiss pursuant to Rule 12(b)(6), (Doc. 12), and submitted a memorandum in support of its motion, (Def.'s Mem. in Supp. of Mot. to Dismiss ("Def.'s Mem.") (Doc. 13).) Plaintiff has responded, (Doc. 15), and Defendant has replied, (Doc. 16.)

## II. STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In other words, the plaintiff must plead facts that "allow[] the court to draw the reasonable inference that the defendant is liable" and must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678.

When ruling on a motion to dismiss, this court must accept the complaint's factual allegations as true. Iqbal, 556 U.S. at 678. Further, "the complaint, including all reasonable inferences therefrom, [is] liberally construed in the plaintiff's favor." Estate of Williams-Moore v. All. One Receivables Mgmt., Inc., 335 F. Supp. 2d 636, 646 (M.D.N.C.

2004) (citation omitted). Despite this deferential standard, a court will not accept legal conclusions as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [will] not suffice." Iqbal, 556 U.S. at 678.

Employment discrimination complaints must meet the Twombly/Iqbal plausibility standard; however, the plaintiff is not required to make out a prima facie case or satisfy any heightened pleading requirements at the motion to dismiss stage. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002); McCleary-Evans v. Md. Dep't of Transp., State Highway Admin., 780 F.3d 582, 584–85 (4th Cir. 2015). The plaintiff is, however, required to plead facts that permit the court to reasonably infer each element of the prima facie case, including less favorable treatment than similarly-situated employees outside of the protected class. McCleary-Evans, 780 F.3d at 585; see also Iqbal, 556 U.S. at 682–83 (plaintiff must plead facts supporting reasonable inference of discriminatory intent); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 191 (4th Cir. 2010) (stating that a complaint must "assert facts establishing the plausibility" that plaintiff was terminated based on race). The Fourth Circuit has explained, however, that "evidentiary determinations regarding whether the comparators' features are sufficiently

similar to constitute appropriate comparisons generally should not be made at" the motion to dismiss stage. Woods v. City of Greensboro, 855 F.3d 639, 650 (4th Cir.), cert. denied sub nom., City of Greensboro v. BNT Ad Agency, LLC, ____ U.S. ____, 138 S. Ct. 558 (2017).

"A plaintiff may prove that an employer took action with discriminatory or retaliatory intent through direct evidence or through the burden-shifting framework of McDonnell Douglas Corp. v. Green." Strothers v. City of Laurel, 895 F.3d 317, 327 (4th Cir. 2018). Under the McDonnell Douglas framework, once the plaintiff has made a plausible showing of each element, the claim will survive a motion to dismiss and the burden then shifts to the defendant to provide "some legitimate, nondiscriminatory reason" for the disparate treatment. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).

**III. ANALYSIS**

    **A.    Hostile Work Environment**

To state a claim for a hostile work environment based on race, under 42 U.S.C. § 1981 or Title VII,[1] a plaintiff must show that "the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65-67 (1986)).

> To demonstrate sexual harassment and/or a racially hostile work environment, a plaintiff must show that there is (1) unwelcome conduct; (2) that is based on the plaintiff's sex [and/or race]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an

---

[1] The substantive elements of a claim are the same under 42 U.S.C. § 1981 and Title VII. See Gairola v. Va. Dep't of Gen. Servs., 753 F.2d 1281, 1285 (4th Cir. 1985). However, a § 1981 claim is not subject to the Title VII requirement that a plaintiff first exhaust his administrative remedies before bringing a lawsuit. See Causey v. Balog, 162 F.3d 795, 804 n.6 (4th Cir. 1998) (noting that the plaintiff's Title VII claim was dismissed for failure to exhaust administrative remedies and proceeding to evaluate plaintiff's derivative § 1983 claim). This court briefly notes that the statute of limitations for a § 1981 claim arising after 1991 is four years. See Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 382 (2004). While it appears that the alleged failure to promote may have occurred more than four years prior to the filing of this lawsuit, this fact is not clear from the face of the Complaint. Therefore, this court will not presently dismiss any claims as time-barred. See Goodman v. Praxair, Inc., 494 F.3d 458, 465-66 (4th Cir. 2007).

abusive work environment; and (4) which is imputable to the employer.

Okoli v. City of Balt., 648 F.3d 216, 220 (4th Cir. 2011) (internal quotation marks and citation omitted).

This court has no trouble finding that Plaintiff has plausibly alleged remarks that were unwelcome, based on the Plaintiff's race, and sufficiently severe or pervasive. Indeed, the Fourth Circuit has held that even a single instance of racially-demeaning speech in the workplace may by itself create a hostile work environment. See, e.g., Boyer-Liberto v. Fountainebleau Corp., 786 F.3d 264, 279-80 (4th Cir. 2015) ("Consequently, a reasonable jury could find that Clubb's two uses of the 'porch monkey' epithet — whether viewed as a single incident or as a pair of discrete instances of harassment — were severe enough to engender a hostile work environment."). Plaintiff further states that he reported these incidents to management, thus plausibly alleging that the conduct is imputable to Defendant. See Vance v. Ball State Univ., 570 U.S. 421, 427 (2013) ("[A]n employer [is] liable for a racially hostile work environment if the employer was negligent, i.e., if the employer knew or reasonably should have known about the harassment but failed to take remedial action.").

Defendant contends that the Complaint lacks specificity regarding the alleged racially-motivated comments and harassment, (see Def.'s Mem. (Doc. 13) at 5), and therefore fails to state a claim.[2] However, this court finds that the specific facts alleged (the verbal comment in August 2016 and the spitting incidents) could, if established, be sufficient by themselves to give rise to a hostile work environment claim. In other words, it is at least plausible that Defendant could be liable without any proof of actual knowledge. Therefore, this court finds that Plaintiff has plausibly stated a hostile work environment claim and Defendant's motion to dismiss that claim will be denied.

---

[2] This court agrees with Defendant that the Complaint is light on details, including details that Plaintiff would presumably know and be able to relate — for example, the identity of the manager or manager to whom Plaintiff reported the alleged racial slur. However, this court does not find that the Complaint is so wholly devoid of factual support to warrant dismissal at this stage. Unlike the complaint in Tuscarora Yarns, which Defendant holds out as an appropriate comparison, (see Def.'s Mem. (Doc. 13) at 8-9), Plaintiff has in fact alleged "what was said" rather than merely alleging the general nature of conversations. Cf. E.E.O.C. v. Tuscarora Yarns, Inc., No. 1:09-cv-217, 2010 WL 785376, at *2-3 (M.D.N.C. Mar. 3, 2010). Therefore, this court finds that Plaintiff has provided both "fair notice of the nature of the claim, . . . [and] grounds on which the claim rests." Twombly, 550 U.S. at 555 n.3 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1202, at 94-95 (2d ed. 1990)).

### B. Discriminatory Failure to Promote

To establish a prima facie case of failure to promote under 42 U.S.C. § 1981, the plaintiff must plausibly allege "that (1) [he] is a member of a protected group, (2) [he] applied for the position in question, (3) [he] was qualified for that position, and (4) the defendants rejected [his] application under circumstances that give rise to an inference of unlawful discrimination." Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 268 (4th Cir. 2005).

Here, Plaintiff alleges that he is black and that he was passed over for a promotion which was given to a less-qualified and less-experienced white applicant. (Compl. (Doc. 7) ¶¶ 6, 12.) Although Plaintiff does not specifically allege that he was qualified for the lead man position, the fact that a less-qualified applicant was hired "allows [this] court to draw the reasonable inference" that Plaintiff was in fact qualified. Iqbal, 556 U.S. at 678. This court finds that Plaintiff has plausibly alleged each element of a discriminatory failure-to-

promote claim, and Defendant's motion to dismiss this claim will therefore be denied.[3]

However, this court again cautions Plaintiff and Plaintiff's counsel that the lack of detail regarding facts presumably within Plaintiff's knowledge, such as the manager who told Plaintiff about the alleged policy and the specific time and place of this meeting, will not suffice at a later stage of these proceedings.

C. **Retaliation**

"In order to establish a prima facie case of retaliation, a plaintiff must prove three elements: (1) that [he] engaged in a protected activity; (2) that [his] employer took an adverse employment action against [him]; and (3) that there was a causal link between the two events." E.E.O.C. v. Navy Fed. Credit Union, 424 F.3d 397, 405-06 (4th Cir. 2005).[4]

---

[3] While this court agrees with Defendant that a general allegation of less favorable treatment pursuant to an alleged corporate policy or pattern of behavior does not suffice to state a failure-to-promote claim, (see Def.'s Mem. (Doc. 13) at 9), this court bases its findings here not on the alleged policy but rather on Plaintiff's allegations regarding his own rejection after applying for the lead man promotion.

[4] 42 U.S.C. § 1981 encompasses retaliation claims, and these claims are evaluated under the same legal standard as Title VII retaliation claims. Boyer-Liberto, 786 F.3d at 281; see also CBOCS W., Inc. v. Humphries, 553 U.S. 442, 454-55 (2008) (recognizing the overlap between Title VII and § 1981).

To establish a causal link, the third element, a plaintiff must show but-for causation, or "proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 360 (2013). In addition, the plaintiff must illustrate close temporal proximity between the "employer's knowledge of protected activity" and the alleged retaliatory action. Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273–74 (2001); see also Anderson v. Coors Brewing Co., 181 F.3d 1171, 1179 (10th Cir. 1999) (stating that one and a half months is sufficiently short to demonstrate causation, but three months is too long). However, temporal proximity alone will not suffice where the passage of time undermines any conclusion that the events are causally connected. See Breeden, 532 U.S. at 273–74 (finding that a twenty-month gap suggested "no causality at all"; citing cases finding no causal link when the gap was only three or four months). In that event, the plaintiff may also establish causation by presenting circumstantial evidence of retaliatory intent during the longer intervening period between the protected conduct and the adverse action. See, e.g., Lettieri v. Equant Inc., 478 F.3d 640, 650–51 (4th Cir. 2007) (intervening events between protected conduct and termination showed continuing retaliatory animus).

Here, Plaintiff's complaint to management about alleged racial slurs was protected activity because Plaintiff reasonably believed that he was bringing a § 1981, or Title VII, violation to management's attention. See Boyer-Liberto, 786 F.3d at 284 ("[A]n employee will have a reasonable belief that a hostile work environment is occurring based on an isolated incident if that harassment is physically threatening or humiliating."). Specifically, this court finds that Plaintiff has alleged reasonable opposition to harassment that was objectively humiliating. Further, it is well-established that termination is an adverse action. See Strothers, 895 F.3d at 328.

Employee discipline pursuant to an employer's reasonable personnel regulations, however, is generally not an independent adverse action unless an employer either disparately applies disciplinary measures across the company or enforces these measures in a manner "so extreme and intrusive as to constitute harassment." Aldrich v. Burwell, 197 F. Supp. 3d 124, 134 (D.D.C. 2016). Here, Plaintiff does not allege that the disciplinary action taken against him was disproportionate, discriminatory, or even unwarranted. (See Compl. (Doc. 7) ¶ 9.) Therefore, this court finds that the September 2016 disciplinary action was not an adverse action for purposes of Plaintiff's retaliation claim.

Plaintiff alleges that he complained to Defendant's managers in late August 2016, that he was disciplined on September 2, 2016, and that he was terminated on October 4, 2016. (Id. ¶¶ 7-10.) Viewing these allegations in the light most favorable to Plaintiff, Plaintiff was terminated less than one and a half months after his complaint.[5] This length of time is generally at the upper end of the range that courts consider close enough to demonstrate causation. See Breeden, 532 U.S. at 273; Anderson, 181 F.3d at 1179. Therefore, this court finds that the temporal proximity of the complaint to Plaintiff's termination, coupled with the intervening disciplinary action, is sufficient to plausibly establish causation. See Haire v. Bd. of Supervisors of La. State Univ. Agric. and Mech. Coll., 719 F.3d 356, 368 (5th Cir. 2013) (reversing grant of summary judgment for the defendant where approximately four months elapsed between the protected activity and adverse action, with intervening developments that suggested retaliatory animus). Defendant's motion to dismiss Plaintiff's retaliation claim will be denied.

---

[5] This court simply does not agree that the period between "the end of August" and October 4th is equivalent to two months, as Defendant has argued. (See Def.'s Mem. (Doc. 13) at 8.)

### D. Violation of State Public Policy

This court interprets Plaintiff's second claim for relief as alleging wrongful discharge in violation of public policy. (See Compl. (Doc. 7) ¶¶ 20-23.) While "North Carolina is an employment-at-will state. . . . [The North Carolina Supreme Court] has recognized a public-policy exception to the employment-at-will rule." Kurtzman v. Applied Analytical Indus., Inc., 347 N.C. 329, 331-32, 493 S.E.2d 420, 422 (1997); see also Coman v. Thomas Mfg. Co., 325 N.C. 172, 175-76, 381 S.E.2d 445, 447 (1989). For example, where the defendant corporation terminated the plaintiff "for refusing to work for less than the statutory minimum wage," this conduct violated the clearly-articulated public policy of the state and the plaintiff could maintain a wrongful discharge claim. Amos v. Oakdale Knitting Co., 331 N.C. 348, 351-54, 416 S.E.2d 166, 168-70 (1992). Further, "absent (a) federal preemption or (b) the intent of our state legislature to supplant the common law with exclusive statutory remedies, the availability of alternative remedies does not prevent a plaintiff from seeking tort remedies for wrongful discharge based on the public policy exception." Id. at 356-57, 416 S.E.2d at 171; see also Hicks v. Robeson Cty., No. 7:98-CV-105-BR(I), 1998 WL 1669080, at *4 (E.D.N.C. Oct. 15, 1998) (finding that "the availability of a remedy under Title

VII does not prevent a plaintiff from seeking tort remedies for wrongful discharge based on the public policy exception").

Here, North Carolina law provides that "[i]t is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of race . . . ." N.C. Gen. Stat. § 143-422.2. Defendant allegedly violated this policy by permitting a racially-charged hostile work environment, discriminating against Plaintiff by not promoting him, and retaliating against Plaintiff.[6] The legal standard for a public policy wrongful discharge claim is the same as for a Title VII, or 42 U.S.C. § 1981, discrimination claim. See Hughes v. Bedsole, 48 F.3d 1376, 1383 (4th Cir. 1995). Plaintiff's potential federal remedies do not preempt this claim. Therefore, Defendant's motion to dismiss Plaintiff's

---

[6] While this court agrees with Defendant that Plaintiff's failure to identify the specific public policy that was violated would ordinarily be fatal to Plaintiff's claim, (see Def.'s Mem. (Doc. 13) at 11), and admonishes Plaintiff's counsel regarding this omission, this court ultimately finds that it may look beyond the face of the Complaint to determine the basis for this claim. See Coman, 325 N.C. at 173–76, 381 S.E.2d at 445–47 (finding that the plaintiff, a long-haul truck driver, had stated a claim for wrongful discharge in violation of public policy when he alleged that his employer constructively terminated him for refusing to falsify logs to conceal violations of shift length regulations; relying in part on North Carolina civil and criminal statutes not specifically identified by the plaintiff).

state-law wrongful discharge in violation of public policy claim will be denied.

## IV. CONCLUSION

For the reasons stated herein, this court finds that Defendant's motion to dismiss should be denied.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss, (Doc. 12), is **DENIED WITHOUT PREJUDICE.**

This the 18th day of March, 2019.

                              /s/ William L. Osteen, Jr.
                              United States District Judge